**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| BIAX CORPORATION, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:06-CV-364 (TJW) |
| | § | |
| FUJITSU COMPUTER SYSTEMS CORP. | § | |
| and SUN MICROSYSTEMS INC., | § | |
|    Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Sun Microsystems Inc.'s Motion to Disqualify Williams, Morgan, and Amerson, P.C. (#24). After carefully considering the submissions and arguments of counsel, the Court DENIES the motion for the reasons set forth below.

**I.     Factual Background and Procedural Posture**

In September 2006, Biax Corporation ("Biax") sued Fujitsu Computer Systems Corp. and Sun Microsystems, Inc. ("Sun") for infringement of United States Patent Nos. 5,517,628, entitled "Computer with Instructions that Use an Address Field to Select Among Multiple Condition Code Registers," and 6,253,313, entitled "Parallel Processor System for Processing Natural Concurrencies and Method Therefor."[1] The technology encompassed by these two patents generally relates to microprocessor technology. Specifically, as the patent titles indicate, the patents involve multiple condition code registers and parallel processing of instructions.

From 2000 to 2002, Williams, Morgan, and Amerson, P.C. ("WM&A") represented Sun in responding to a charge of patent infringement and prosecuting several Sun patent applications.

---

[1] Biax also sued the defendants for infringement of U.S. Patent No. 5,021,945 ("the '945 patent"). In its amended complaint, Biax dropped its claim of infringement with regards to the '945 patent.

WM&A now represents Biax in this patent infringement suit. Sun alleges that WM&A should be disqualified from representing Biax based on the substantial similarity between the matters in WM&A's previous representation and the matters in the present litigation, and WM&A's past access to confidential Sun information.

## II.   Discussion

The party seeking disqualification bears the burden of proving that disqualification is warranted. *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. Unit B 1981), cert. denied, 454 U.S. 895, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). Motions to disqualify counsel in Texas federal courts implicate federal law. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). This Court is not limited to the state's ethical rules, but may also consider national norms of professional conduct, including the ABA Model Rules and the Model Code. *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992).

To disqualify opposing counsel based on a former representation, a movant must establish two elements - 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify, and 2) a substantial relationship between the subject matter of the former and present relationships. *In re American Airlines, Inc.*, 972 F.2d at 614 (citations omitted). It is not disputed that WM&A previously represented Sun on several patent-related matters. The sole issue, therefore, is whether WM&A's prior representation is substantially related to the present case.[2]

In determining whether a substantial relationship exists, the Court must examine the issues that arose in the previous representation and the issues likely to arise in the current one. *Power*

---

[2] If it is established that a prior representation was substantially related to the present case, then there is an irrebuttable presumption that relevant confidential information was disclosed during the prior representation. *In re American Airlines, Inc.*, 972 F.2d at 614.

2

*Mosfet Techs., L.L.C. v. Siemens AG*, 2002 WL 32785219, *2 (E.D. Tex. Sept. 30, 2002). Some of the factors to be considered include "(1) the factual similarities between the current and former representations, (2) the similarities between the legal questions posed, and (3) the nature and extent of the attorney's involvement with the former representation." *Id*. The Court will now address each issue raised in Sun's motion to disqualify.

    **A.**    **Litigation Representation**

Sun first argues that WM&A's prior representation involved legal strategies responsive to intellectual property asset management companies. Sun contends that WM&A developed a defensive and settlement strategy for infringement charges brought by an intellectual property asset management company. According to Sun, WM&A can now use that information against Sun in this litigation.

In response, WM&A denies developing a litigation strategy for Sun and contends that its prior litigation representation was limited to providing an opinion to Sun regarding the alleged infringement by a third party. WM&A also points out that the opinion work related to different technology than the technology in the present case.

The Court is not persuaded that WM&A's prior litigation work involving strategies against an intellectual property asset management company is substantially related to this case. Sun has not offered any evidence, other than an affidavit by its chief patent counsel, that WM&A's work involved anything more than opinion work. In addition, Sun's argument that both representations involve server architecture is too broad for purposes of establishing a substantial relationship.

    **B.**    **Technology**

Sun contends that WM&A's patent prosecution work involved numerous Sun engineers and

allowed WM&A to gain an in-depth understanding of Sun's server and processor architecture. In support of its arguments, Sun offers the affidavit of Mr. Richard Zatorski, a senior manager at Sun. *See* Sun's Motion to Disqualify, Exhibit C. Mr. Zatorski states that his discussions with WM&A attorneys involved the interrupt architecture of Sun servers and the architecture of the Schizo IO chip. *Id*.

Furthermore, Sun points out that WM&A worked on SPARC I, II, and III architectures which were the foundation for the SPARC IV and T1 (the servers alleged to infringe in this case) architectures. Sun also points out that the condition code registers alleged to infringe the Biax patents were present in the devices that WM&A worked on in its prior representations.

In its response, WM&A contends that its patent prosecution work for Sun involved technology separate from the processor architecture or any of the inner workings of a processor. According to WM&A, even though the condition code registers were present in Sun's prior servers, none of its prosecution work for Sun involved discussing the condition code registers.

Sun fails to meet its burden of establishing a substantial relationship between the technology involved in WM&A's patent prosecution work and the technology involved WM&A's current representation of Biax. Interrupt architecture is a part of server technology unrelated to the performance of code registers or parallel instruction processing. In addition, Sun has not shown that general discussions regarding the architecture of an IO chip and server architecture imputed to WM&A any detailed knowledge of code registers or parallel instruction processing.

    **C.**    **Confidential Information**

Sun also argues that confidential information regarding the operation of Sun servers were provided to WM&A as part of its prosecution work. In addition, Sun claims that WM&A gained

a detailed perspective into Sun's engineering departments which would help Biax conduct discovery. In response, WM&A argues that Sun has failed to meet its burden by not identifying any specific confidential information disclosed to WM&A.

Once again, Sun fails to meet its burden. Sun merely argues that it disclosed confidential information related to its servers without specifically identifying what confidential information was disclosed and how, specifically, any such information is pertinent to this case.

**III.   Conclusion**

The Court finds no sufficient grounds for disqualifying Williams, Morgan & Amerson, P.C. Sun has not met its burden of establishing a substantial relationship between the technology involved in WM&A's prior representation of Sun and its current representation of Biax Corporation. Although WM&A's prior and current representations involve server technology, the specific aspects of server technology related to those representations are quite different. Accordingly, Sun Microsystems, Inc.'s motion to disqualify WM&A is DENIED.

SIGNED this 16th day of May, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE